Minute Order Form (06/97)

(12)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6411 - (MDL 1403) | **DATE** | 4/24/2002 |
| **CASE TITLE** | Mitchell Corbin etc. et al. Vs. Aventis CropScience USA et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion to remand is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | number of notices |
| | No notices required. | | APR 26 2002 date docketed |
| | Notices mailed by judge's staff. | | am docketing deputy initials |
| | Notified counsel by telephone. | U.S. DISTRICT COURT | date mailed notice |
| ✓ | Docketing to mail notices. | 02 APR 25 PM 8:51 | mailing deputy initials |
| | Mail AO 450 form. | Date/time received in central Clerk's Office | |
| | Copy to judge/magistrate judge. | | |
| WAH | courtroom deputy's initials | | |

Document Number: 26

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
APR 26 2002

| | |
|---|---|
| IN RE STARLINK CORN PRODUCTS LIABILITY LITIGATION<br><br>This document relates to: | MDL No. 1403 |
| MITCHELL, CORBIN, CLAUDE CORBIN, CORBIN FARMS LLC and CLINT KILLIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AVENTIS CROPSCIENCE USA HOLDING, INC.,<br><br>Defendants. | No. 01 C 6411 |
| MARVIN LUIKEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>AVENTIS CROPSCIENCE USA HOLDING, INC.,<br><br>Defendant. | No. 01 C 6406 |
| KEITH MUDD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>AVENTIS CROPSCIENCE USA HOLDING, INC. and GARST SEED COMPANY,<br>Defendants. | No. 01 C 7185 |

26

## MEMORANDUM OPINION AND ORDER

This matter arises from the discovery of genetically engineered corn in the human food supply. Dozens of corn farmers filed suit in various federal and state courts throughout the country against defendants Aventis CropScience USA Holding, Inc. (Aventis), who developed StarLink brand seeds, and Garst Seed Company (Garst), an Aventis licensee who distributed StarLink seeds. Defendants removed the state court cases, pursuant to 28 U.S.C. §1441. Several plaintiffs filed motions for remand, contesting whether their cases met the $75,000 amount-in-controversy requirement under 28 U.S.C. §1332. Some of those motions were still pending when the Panel for Multidistrict Litigation (MDL) transferred all StarLink-related cases here for pretrial purposes, pursuant to 28 U.S.C. §1407. Following an amended consolidated complaint, plaintiffs Clint Killin, Marvin Luiken and Keith Mudd (collectively, the "movants") filed a renewed motion for remand. For the following reasons, their motion for remand is denied.

## BACKGROUND

Aventis genetically engineered a corn seed to produce Cry9C, a protein toxic to certain insects, and marketed it under the brand name StarLink. Because the EPA, which regulates pesticides, had concerns about Cry9C as a potential allergen, it issued only a limited registration for StarLink distribution in the United States. StarLink was authorized for uses such as animal feed and ethanol production, but was prohibited from being used for human consumption. The EPA required Aventis and its licensees to take specific precautions in the cultivation, harvesting, handling, storage and transport of StarLink to prevent contamination of the human food supply. In addition to prescribed segregation methods, Aventis was

required, for example, to instruct farmers how to store and dispose of seeds, seed bags and plant detritus. Based on typical corn pollenation patterns, the EPA also required a 660-foot buffer zone around StarLink crops to prevent cross-pollenation with non-StarLink corn. Plaintiffs allege that defendants failed to fulfill these obligations, and that these failures caused StarLink to enter the human food supply.[1]

Killin, along with co-plaintiffs Mitchell Corbin, Claude Corbin and Corbin Farms, LLC (collectively, the "Corbins"), originally filed suit in the Circuit Court of Cole County, Missouri, against Aventis, which then removed to federal court in the Western District of Missouri. The Corbins grew approximately 1000 acres of corn per season and agree that their damages exceed the jurisdictional minimum. Killin grew approximately 490 acres of corn. Mudd sued Aventis and Garst in the Circuit Court of Cass County, Missouri. Aventis, with Garst's consent, removed to federal court in the Western District of Missouri. Mudd grew approximately 550 acres of corn. Luiken filed suit against Aventis in the Iowa District Court for Hardin County, from which Aventis removed to federal court in the Northern District of Iowa. Luiken grew approximately 325 acres of corn.

Aventis is a Delaware corporation, headquartered in North Carolina. Garst is a Delaware corporation, headquartered in Iowa. Killin and Mudd are residents of Missouri. Luiken is a resident of Iowa. Diversity of citizenship is not contested.[2] The complaints all request compensatory and punitive damages, injunctive relief and attorneys' fees. Although

---

[1]The complaints rely on a variety of legal theories, including public and private nuisance, negligence, strict liability and several consumer protection statutes.

[2]As noted above, Luiken filed suit only against Aventis, not Garst. Although he and Garst are both Iowa citizens, they are not parties to the same action.

plaintiffs do not specify any amount of damages or ascribe any value to the requested injunction, they do describe the nature of their injuries and requested relief. First, they claim that the discovery of StarLink in food products materially depressed the market price for corn for the 1998 through 2000 growing seasons.[3] Second, they allege that they have incurred or will incur substantial costs for decontaminating their soil, facilities and equipment, and testing and segregating their crops. They also seek an injunction ordering defendants to decontaminate all soil, farming equipment, storage equipment, harvest equipment, transportation facilities, grain elevators and non-StarLink seed supplies, and prohibiting defendants from resuming StarLink distribution until the EPA approves it for all uses. Movants all claim, by affidavit, that the amount in controversy with respect to their claims is less than $75,000.[4]

## DISCUSSION

At the outset, we observe that the circuit courts of appeals do not all agree on the jurisdictional requirements. The movants' cases all originated in districts within the Eighth Circuit. We sit within the Seventh Circuit. This creates a federal choice of law question as to whose interpretations of 28 U.S.C. §§1332 and 1367 apply.

With respect to issues of state law we must apply the same law as the transferor court. Van Dusen v. Barrack, 376 U.S. 612 (1964). The transfer is merely "a change of courtrooms." *Id.* at 642. Here, however, the question is divergent interpretations of federal law. The

---

[3]For example, South Korea and Japan, two of the largest corn importers, have refused to purchase corn from the United States because of concerns over StarLink contamination.

[4]We note that these affidavits are not binding and would not preclude movants from recovering far greater than $75,000 at trial.

seminal case discussing choice of federal law with respect to transferred cases is In re: Korean Air Lines Disaster of September 1, 1983, 829 F.2d 1171 (D.C. Cir. 1987) (Ruth Bader Ginsburg, J.), *aff'd on other grounds sub nom.* Chan v. Korean Air Lines, Ltd., 490 U.S. 122 (1989).

> Because there is ultimately a single proper interpretation of federal law, the attempt to ascertain and apply diverse circuit interpretations simultaneously is inherently self-contradictory. Our system contemplates differences between different states' laws; thus a multidistrict judge asked to apply divergent state law would face a coherent, if sometimes difficult, task. But it is logically inconsistent to require one judge to apply simultaneously different and conflicting interpretations of what is supposed to be a unitary federal law. ...The federal courts spread across the country owe respect to each other's efforts and should strive to avoid conflicts, but each has an obligation to engage independently in reasoned analysis. Binding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit.

829 F.2d at 1175-76. The Seventh Circuit has endorsed Korean Air Lines' analysis. *See* Eckstein v. Balcor Film Investors, 8 F.3d 1121, 1126 (7th Cir. 1993). Although Eckstein ultimately applied the law of the transferor court's circuit, it did so by defining a narrow exception to Korean Air Lines, while approving the D.C. Circuit's general rule and reasoning.[5] Several post-Eckstein cases have expounded on this distinction and recognized Korean Air Lines as the rule in this circuit. *See* McMasters v. United States, 260 F.3d 814, 819 (7th Cir. 2001). ("Only where the law of the United States is specifically intended to be geographically non-uniform should the transferee court apply the circuit precedent of the transferor court."); Mark v. Keycorp Mortgage, Inc., 1996 WL 465400 at *6 n.4 (N.D. Ill. Aug. 6, 1996) (noting

---

[5]Eckstein dealt with section 27A of the Securities Exchange Act of 1934, 15 U.S.C. §78aa-1(a), which specifically instructed courts to apply "the laws applicable in the jurisdiction, ... as such laws existed on June 19, 1991." The court found that Congress intended to codify the geographically fractured state of the law as of that date. 8 F.3d at 1126.

limited application of Eckstein and applying Seventh Circuit law based on Korean Air Lines); Weiner v. Quaker Oats Co., 2000 WL 1700136 at *9 n.8 (N.D. Ill. Nov. 13, 2000) (citing Eckstein for proposition that transferee circuit law should generally control).

One court in this district has already applied this principle to the jurisdictional statutes. *See* In re: Amino Acid Lysine Antitrust Litigation, 927 F. Supp. 273, 275 n.5 (N.D. Ill. 1996). This is arguably the area where the need for uniformity of federal law is most compelling. Applying the law of the transferor circuit could yield a situation where we would find federal jurisdiction exists over claims from some parts of the country, but not from others. This is an untenable result. The scope of all federal district courts' subject matter jurisdiction should be identical. On the other hand, our jurisdiction should only exist to the extent that the transferor court initially had jurisdiction over these matters. It would seem odd for us to retain a case that the transferor court could not have heard to start with. Ultimately, however, we find Korean Air Lines' reasoning in favor of independent analysis by each federal circuit too compelling, particularly where subject matter jurisdiction is involved. We will apply Seventh Circuit law. Should any of these cases ultimately return to transferor courts outside this circuit, our determination would be binding as law of the case. Korean Air Lines, 829 F.2d at 1176.

Now that we have determined the applicable law, we turn to the complaints at issue. Removal jurisdiction is construed narrowly. Doe v. Allied Signal, Inc, 985 F.2d 908, 911 (7th Cir. 1993). We first look to the original state court complaint, and then to the record as a whole. Shaw v. Dow Brands, Inc., 994 F.2d 364, 366 (7th Cir. 1993). Movants' complaints are silent as to the amounts in controversy, and they have filed affidavits averring that their

damages are less than $75,000. When our jurisdiction is fairly cast into doubt, the party attempting to invoke it bears the burden to establish the amount in controversy. In re: Brand Name Prescription Drugs Antitrust Litigation, 123 F.3d 599, 607 (7th Cir. 1997). This puts defendants in the awkward position of having to argue that plaintiffs' damages could be greater than they themselves claim. But defendants need only establish jurisdiction exists by a preponderance of evidence, not to a legal certainty. They must simply show there is a reasonable probability that more than $75,000 is in controversy. *See* Shaw, 994 F.2d at 366 and n.2.

At this point we note that we are not the first to address the amount-in-controversy question with respect to StarLink litigation. Several courts had ruled on comparable motions to remand before the MDL panel consolidated the cases here. *See* Sutter v. Aventis CropScience USA Holding, Inc., 145 F.Supp.2d 1050 (S.D. Iowa 2001) (denying motion to remand); Schnoebelen v. Aventis CropScience USA Holding, Inc., No. 01-1059, slip op. (D. Kan. May 4, 2001) (same); Jemar, Inc. v. Aventis CropScience USA Holding, Inc., No. 01CV138, slip op. (D. Neb. May 18, 2001) (same); Olsen v. Aventis CropScience USA Holding, Inc., No. A1-01-32, slip op. (D.N.D. May 24, 2001) (same); Smith v. Aventis CropScience USA Holding, Inc., No. 01-710, slip op. (D. Md. Jun. 4, 2001) (same); Dupraz v. Aventis CropScience USA Holding, Inc., 153 F.Supp.2d 1102 (D.S.D. 2001) (same); Wolff v. Aventis CropScience USA Holding, Inc., No. 01-1032, slip op. (D. Minn. Aug. 8, 2001) (same); *but see* Mulholland v. Aventis CropScience USA Holding, Inc., No. 01-CV-160, slip op. (S.D. Ill. May 31, 2001) (granting motion to remand); Rose v. Aventis CropScience USA Holding, Inc., No. 01-201, slip op. (S.D. Ind. Apr. 17, 2001) (same). Defendants rely heavily on the fact that the vast majority

have found that these other plaintiffs, who alleged similar claims and are represented by the same counsel as movants, exceeded the jurisdictional amount. These cases are helpful in that they perform the same analysis that we now undertake and provide a useful framework for our discussion here, but they are not dispositive. Not all StarLink plaintiffs are identical. Their injuries vary with the size of their farms, among other factors. We must address each plaintiff's injuries individually.

First, we will address Killin, who requests that we sever his case from his co-plaintiffs, the Corbins. We have original jurisdiction over the Corbins' claims because they concede (indeed allege) that their damages exceed $75,000. Killin's claims are part of the same case or controversy. In the Seventh Circuit, as long as one named plaintiff satisfies the jurisdictional amount, 28 U.S.C. §1367 authorizes supplemental jurisdiction over other plaintiffs with related claims. See Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928, 931 (7th Cir. 1996); In re: Brand Name Prescription Drugs, 123 F.3d at 607. This rule is dispositive here. Because we can exercise supplemental jurisdiction over Killin's claim, we need not sever it.

We now turn to Luiken and Mudd.[6] The analysis for both is fundamentally the same. Damages, for the most part, will vary directly with acreage – the larger the farm, the greater the damages. We will refer primarily to Luiken's damages because he has the smaller farm, approximately 325 acres. If his claims exceed the jurisdictional amount, Mudd's will too.

First, the complaints allege that StarLink contamination depressed prices during the

---

[6]They are both sole named plaintiffs in their respective cases, so the Stromberg rule does not enter the equation.

1998, 1999 and 2000 growing seasons. The national average corn yield over that period was 133 bushels per acre. *See* Schnoebelen, *supra*, slip op. at 6. Based on this yield, Luiken's 325 acre farm would have grown approximately 43,000 bushels per year, or 130,000 over three years. At least two courts have cited 25¢ per bushel as a reasonable estimate of StarLink-related pricing damages, and both parties refer to this figure in their briefs. *See id.*; Jemar, *supra*, slip op. at 4. We agree that this is reasonable, at least for this stage of litigation. This puts Luiken's pricing damages at approximately $32,000.

Next, movants seek injunctive relief to prevent future harm to their corn crops, and to the corn supply in general. This includes not only purifying movants' soil and equipment, but also repairing the corn storage and transportation systems and taking measures to prevent further cross-pollenation or recontamination. In assessing the value of an injunction for jurisdictional purposes, we evaluate the cost to defendants of that injunction running in favor of an individual plaintiff. *See* In re: Brand Name Prescription Drugs, 123 F.3d at 610.[7]

Movants first need to decontaminate their own fields, facilities and equipment. Assuming a rate of 0.25¢ per square foot, as another court has already done, *see* Dupraz, 153 F.Supp.2d at 1104, it would cost more than $35,000 to decontaminate just the soil on Luiken's 325 acre farm (at 43,560 square feet per acre). This brings Luiken's potential recovery to more than $67,000 for pricing damages and soil decontamination alone,[8] before including the

---

[7]In this respect, we treat the request for injunctive relief much the same as we would a claim for damages. For jurisdictional purposes, it is immaterial whether we provide relief in the form of an injunction ordering defendants to make the repairs, or compensation for repairs already completed (as they may be during the pendency of this litigation).

[8]Applying the same rates to Mudd's 550 acre farm (or Killin's 490 acre farm), the amount in controversy would already surpass the $75,000 threshold.

costs to cleanse Luiken's other facilities and equipment. Movants also allege extra testing and segregation expenses incurred to satisfy customers, storage and transportation providers that their crops are StarLink-free. We have no estimate for these costs in the record, but given the volume of corn involved, even a nominal per bushel cost would contribute substantially to the amount in controversy.

Movants' prayer for relief does not end at their farms' boundaries. It is effectively systemwide. To prevent further cross-pollenation, movants insist that defendants reestablish the EPA-mandated 660 foot buffer zone, meaning they would have to purge any neighboring fields, and any associated facilities and equipment, of StarLink corn. Movants ultimately demand that defendants decontaminate the entire network of grain elevators, storage facilities and transport vehicles. To the extent that all non-StarLink farmers rely on the transportation and storage system being StarLink-free, testing and decontaminating the network is arguably unitary and common relief, meaning that we do not have to apportion the injunction's value among all class members individually. *See* Snyder v. Harris, 394 U.S. 332, 335 (1969); In re: Brand Name Prescription Drugs, 123 F.3d at 609-10. If a single elevator or vehicle is contaminated, then any corn passing through, from whomever's farm, would be tainted. And the contamination could then spread to any facilities down the distribution chain. Because all corn farmers have a common interest in the integrity of the entire system, each farmer realizes the full benefit of the injunction. This is particularly true given the plaintiffs' theory about StarLink's effects on global corn markets. Movants will continue to be harmed by depressed prices so long as the market perceives contamination anywhere in the system. Regardless, even if we do disaggregate the costs by considering only the elevators, facilities and vehicles directly

utilized by movants, and apportion those costs among all the farmers who used them, the sums involved are still likely to be substantial.

Beyond purifying the current system, movants also seek to enjoin defendants from resuming StarLink distribution until the EPA approves it for all uses. Although Aventis has already ceased StarLink distribution, and its registration has expired, it retains the legal right to re-register StarLink and resume distribution. An injunction would give movants an additional level of protection and is therefor of some, albeit discounted, value.

Lastly, punitive damages and attorneys' fees, if applicable, would both count towards the amount in controversy. Because these are purported class actions we must divide any potential award among the entire prospective classes. One court used a figure of 11¢ per bushel as an estimate of potential punitive damages. Schnoebelen, *supra*, at 8. This would equate to nearly $5,000 based on Luiken's 43,000 bushel annual yield.

Defendants have not offered evidence itemizing the costs involved, but their burden is not so stringent. Movants could have avoided federal jurisdiction by agreeing to cap recovery, both monetary and injunctive, below the $75,000 threshold, before their cases were removed. In re: Brand Name Prescription Drugs Antitrust Litigation, 248 F.3d 668, 670-71 (7th Cir. 2001). They have chosen not to do so and therefore to retain the possibility of a significantly greater award. Movants cannot avoid federal jurisdiction by silence, and defendants need not research and prove plaintiffs damages for them. *See id.* at 367. Based on estimates for pricing damages, soil decontamination and punitive damages drawn from other StarLink cases, we have already accounted for over $72,000 in potential relief for the smallest movant, plus the costs to decontaminate equipment, the 660 foot buffer zone, storage and transportation

facilities, any testing and segregation costs, an injunction against resuming StarLink distribution and attorneys' fees. Whether movants are entitled to such broad-ranging relief remains to be seen, but their complaints put these remedies in controversy. Based on the breadth of relief sought, there is far more than a reasonable probability that the amount in controversy with respect to each movant exceeds the $75,000 minimum.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand is denied.

James B. Moran
JAMES B. MORAN
Senior Judge, U. S. District Court

April 24, 2002.